# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

WILLIAM EDWARD S.,[1]                )
                                      )
                    **Plaintiff,**    )
                                      )        **CIVIL ACTION**
**v.**                                )
                                      )        **No. 19-1061-JWL**
**ANDREW M. SAUL,[2]**                )
**Commissioner of Social Security,**  )
                                      )
                    **Defendant.**    )
_____)


# MEMORANDUM AND ORDER


Plaintiff seeks review of a decision of the Commissioner of Social Security

denying Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI)

benefits pursuant to sections 216(i), 223, 1602, and 1614(a) of the Social Security Act, 42

U.S.C. §§ 416(i), 423, 1381a, and 1382c(a) (hereinafter the Act).  Finding no error in the

Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be

entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the

Commissioner's final decision.

---

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.
[2] On June 17, 2019, Andrew M. Saul was sworn in as Commissioner of Social Security.  In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant.  In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

# I.       Background

Plaintiff protectively filed applications for DIB and SSI on October 8, 2013.  (R. 12, 372-86).  After exhausting administrative remedies, Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff argues that the ALJ erred in failing to consider the opinions of his friend Craig Speake and failed to consider and express the weight assigned to all the medical opinions.  (Pl. Br. 21-23).  He argues that in assessing Plaintiff's physical residual functional capacity (RFC) the ALJ failed to perform a function-by-function assessment but erroneously assessed exertional level first, and that the opinion of the state agency physician, Dr. Coleman, is insufficient to support the physical RFC (PRFC) assessed.  Id. at 23-25.  He argues the mental RFC (MRFC) assessed is erroneous because the ALJ accorded excessive weight to the opinion of Dr. Yates, the psychologist who examined Plaintiff at the request of the ALJ, did not account for his own finding of moderate limitations in maintaining concentration, persistence, or pace; and failed to assess the global assessment of functioning (GAF) scores in the record.  Id. at 26-28.  Finally, he claims error in the ALJ's failure to consider a closed period of disability.  Id. at 28-29.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord,

White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136,

1139 (10th Cir. 2010) (citing <u>Williams v. Bowen</u>, 844 F.2d 748, 750 (10th Cir. 1988)).

"If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." <u>Wilson</u>, 602 F.3d at 1139 (quoting <u>Lax</u>, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). <u>Williams</u>, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). This assessment is used at both step four and step five of the sequential evaluation process. <u>Id.</u>

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy. <u>Wilson</u>, 602 F.3d at 1139 (quoting <u>Lax</u>, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. <u>Blea v. Barnhart</u>, 466 F.3d 903, 907 (10th Cir. 2006); <u>accord</u>, <u>Dikeman v. Halter</u>, 245 F.3d 1182, 1184 (10th Cir. 2001); <u>Williams</u>, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed. <u>Id.</u>; <u>Haddock v. Apfel</u>, 196 F.3d 1084, 1088 (10th Cir. 1999).

## II. Preliminary Discussion, Matters Precluded by <u>Res Judicata</u>

At the hearing before the ALJ, Plaintiff requested that the ALJ reopen the previous decisions regarding Plaintiff and make benefits retroactive to an earlier period when he was receiving benefits. (R. 94-95). The ALJ considered and denied that request:

> That is denied as the claimant is found to be not disabled during the adjudicative period and there is no need to reopen on that basis. The claimant's last denial of benefits for a previous claim was on December 19, 2012. That case is res judicata, as the claim was not appealed. This case will examine the claimant's condition from that day forward, with any reference to evidence outside of that period for adjudicative purposes only.

(R. 12). Thus, the period at issue in Plaintiff's case before the ALJ was December 20, 2012 through the date of the ALJ's decision, September 21, 2017, and the ALJ explained he would not consider evidence outside that period except for adjudicative purposes.

The sole basis of a federal court's jurisdiction in social security cases arises from 42 U.S.C. § 405(g). Brandtner v. Dep't of Health and Human Servs., 150 F.3d 1306, (10th Cir. 1998) (citing Reed v. Heckler, 756 F.2d 779, 782 (10th Cir. 1985). In 1977, the Supreme Court held that the Administrative Procedures Act does not provide an implied grant of subject-matter jurisdiction for review of the actions of the Social Security Administration. Califano v. Sanders, 430 U.S. 99, 107 (1977). The Court in Sanders held that 42 U.S.C. § 405(g) limits federal judicial review to only final decisions of the Commissioner made after hearing, id. at 108, and that a decision by the Commissioner not to reopen a case is not a "final decision of the [Commissioner] made after hearing," and is not reviewable by federal courts. Id. Where the Commissioner's refusal to reopen is itself challenged on constitutional grounds, however, the court may have jurisdiction to review the allegedly unconstitutional refusal. Id., at 109.

Many of Plaintiff's arguments before this court relate to a time before December 20, 2012 during which Plaintiff was determined to be not disabled, that determination was not appealed, was not reopened, and Plaintiff does not claim the decision not to reopen was itself unconstitutional. So, as found by the ALJ the earlier decision is <u>res judicata</u> and was not an issue for the ALJ's further decision or discussion. Consequently, Plaintiff cannot argue disability during that period or that evidence of disability from that period establishes error in the ALJ's consideration during the period at issue here.

The first argument precluded by the application of the principle of <u>res judicata</u> is Plaintiff's argument that the ALJ failed to consider and identify the weight accorded to Dr. Watt's opinion. (Pl. Br. 22-23). Dr. Watt, a psychologist, examined Plaintiff on May 13, 2008 and provided a report of that examination, dated May 20, 2008, to the Social Security Disability Determination Services in Cheyenne, Wyoming. (R. 515-19). Dr. Watt provided IQ testing of Plaintiff, diagnosed him with Mild Mental Retardation, "317.00 (without the benefit of a measure of adaptive functioning)" and "V62.89 Borderline intellectual ability," and a GAF score of 50. <u>Id.</u> at 518-19. He opined that Plaintiff could work at simple work "in a patient, understanding work setting," could "deal with patient, understanding coworkers and supervisors," and could "deal with mild changes and stress in a routine work setting." <u>Id.</u> at 518. He found Plaintiff's prognosis is guarded and that he would likely need a representative payee to manage his funds if awarded benefits. <u>Id.</u> at 519. This report was made more than four years before the earlier determination Plaintiff was not disabled and the principle of <u>res judicata</u> prohibits it from being relied upon by the ALJ to find otherwise. There is simply no evidence

within the period here to suggest that Plaintiff is as limited as this report suggests. There is no reason for the ALJ to have provided further explanation to distinguish this report.

In a single sentence, Plaintiff complains that the ALJ "also failed to identify the weight given the opinions of" Dr. Balter, Dr. Shields, Dr. Smith, and Dr. Matchell. (Pl. Br. 23). With the exception of Dr. Matchell's, each of these alleged opinions is dated within the period when Plaintiff was adjudged not disabled, and Plaintiff makes no argument to justify relying on, or even considering, the opinions despite the res judicata effect of the prior decisions.

Although Dr. Matchell's opinion was rendered within the period at issue before the ALJ (R. 660-63) ("I have reviewed this report on the above named patient seen on January 30, 2014."), it is based entirely upon Plaintiff's reports of symptoms resulting from and lasting since before the date of the earlier determination in December 2012. Each conclusion in Dr. Matchell's report is based on alleged symptoms pre-dating the earlier decision. His right foot pain conclusion is based on reported symptoms in 2010 and 2011; low back pain conclusion based on 2011; bilateral knee pain based on an injury in high school and in 2005; and depression based on a diagnosis in 1993 and Plaintiff's reports of "current" mental health treatment. (R. 663). Moreover, Dr. Matchell's report does not appear to contain any actual opinions regarding functional limitations. Plaintiff shows no basis to find error in the ALJ's decision to provide no further discussion of these physicians' opinions.

Finally, Plaintiff claims the ALJ erred in failing to consider a potential closed period of disability between July 22, 2010 and September 30, 2011. (Pl. Br. 28-29). This

alleged closed period of disability is within the previously adjudicated period, and as the ALJ specifically explained, he found no basis to reopen that decision.

## III.    Physical RFC

Plaintiff claims three errors in the physical RFC assessment.  He first argues the ALJ "erroneously assessed the exertional level first … relying on the definition of 'light work' as contained in 20 C.F.R. [§§] 404.1567(b) and 416.967(b)," and "[i]t is impossible to determine from [that] definition how the ALJ assessed [Plaintiff's] actual ability to walk, sit, stand, push, and pull."  (Pl. Br. 23).  Plaintiff next argues the ALJ erroneously relied upon the medical opinion of a state agency physician, Dr. Coleman, whose non-examining source opinion is entitled to the least weight, was provided more than three years prior to the decision at issue and was a stale opinion.  Id. at 24-25.  Finally, he argues that the ALJ failed to identify the weight accorded the opinion of Dr. Knoll, id. at 23, and did not explain why he rejected Dr. Knoll's opinion "that Plaintiff was occasionally limited in using his left foot for operation of foot controls."  Id. at 25.

### A.    Function-by-Function Assessment of RFC

While Plaintiff is correct that Social Security Ruling (SSR) 96-8p requires an ALJ to assess an individual's functional limitations on a function-by-function basis before deciding the exertional level of work of which the individual is capable—sedentary, light, medium, heavy, or very heavy—that does not impose an artificial duty to express the exertional level he has assessed only after he has stated in the decision the individual functional limitations.  The requirement is that an ALJ assess a claimant's individual functional limitations and then determine, based on those limitations, the exertional level

of which the claimant is capable.  As SSR 96-8p explains, that procedure aids an ALJ in evaluating at step four whether a claimant can perform past relevant work as it was actually performed or as it is generally performed and in evaluating at step five whether the grid rules are met in a particular case.  Plaintiff is also correct that SSR 96-8p states, "Initial failure to consider an individual's ability to perform the specific work-related functions could be critical to the outcome of a case," but she does not argue that a particular functional limitation was missed or that the ALJ's alleged error was critical to the outcome of <u>this</u> case.  The mere fact that the ALJ stated that Plaintiff has the RFC "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)" with certain additional exceptions, does not demonstrate that he assessed an exertional level before he assessed Plaintiff's functional limitations.

### B.    Evaluation of Dr. Coleman's and Dr. Knoll's Medical Opinions

### 1.    Standard for Evaluating Medical Opinions

For claims filed before March 17, 2017, "[m]edical opinions[3] are statements from physicians and psychologists or other acceptable medical sources that reflect judgments

---

[3]The regulations define three types of "acceptable medical sources:"

"Treating source:" an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship.  20 C.F.R. §§ 404.1502, 416.902.

"Nontreating source:" an "acceptable medical source" who has examined the claimant, but never had a treatment relationship.  <u>Id.</u>

"Nonexamining source:" an "acceptable medical source" who has not examined the claimant, but provides a medical opinion.  <u>Id.</u>

about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Such opinions may not be ignored and, unless a treating source opinion is given controlling weight, <u>all</u> medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations. <u>Id.</u> §§ 404.1527(c), 416.927(c); SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2019). A physician who has treated a patient frequently over an extended period (a treating source) is expected to have greater insight into the patient's medical condition, and his opinion is generally entitled to "particular weight." <u>Doyal v. Barnhart</u>, 331 F.3d 758, 762 (10th Cir. 2003). But, "the opinion of an examining physician [(a nontreating source)] who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." <u>Id.</u> at 763 (citing <u>Reid v. Chater</u>, 71 F.3d 372, 374 (10th Cir. 1995)). However, opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources who have merely reviewed the medical record. <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1084 (10th Cir. 2004); <u>Talbot v. Heckler</u>, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing <u>Broadbent v. Harris</u>, 698 F.2d 407, 412 (10th Cir. 1983), <u>Whitney v. Schweiker</u>, 695 F.2d 784, 789 (7th Cir. 1982), and <u>Wier ex rel. Wier v. Heckler</u>, 734 F.2d 955, 963 (3d Cir. 1984)).

If no treating source opinion is given controlling weight, the inquiry does not end. <u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300 (10th Cir. 2003). A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." <u>Id.</u> Those factors are: (1) length of treatment

relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  Id. at 1301; 20 C.F.R. §§ 404.1527(c)(2-6), 416.927(c)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the factors, the ALJ must give reasons in the decision for the weight he gives the opinion.  Id. 350 F.3d at 1301.  "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so."  Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

### 2.    The ALJ's Evaluation of Dr. Coleman's and Dr. Knoll's Opinions

The ALJ summarized Plaintiff's treatment since 2012 and weighed the opinions of Dr. Coleman and Dr. Knoll:

> The claimant's testimony is inconsistent with his allegations.  He noted that he is not on any pain medication since 2012, and there is no reporting to providers of credible pain that would place him in pain management.  He has no treatment records for the last three years, which problematizes his continued allegations, as objective evidence is necessary.  His last hearing was delayed over a year so that he could get such treatment.

The undersigned notes his injury and recovery form [sic] a right foot injury, which occurred before the period of adjudication. (Exhibit 1F-7F [(R. 514-81)]) The claimant has recovered from the primary injury, but does have some lingering issues noted by examinations. His February 2014 examination in Exhibit 14F [(R. 660-64)], the claimant again complained of limitation due to his right foot injury, however, he had a full range of motion in all joints, with no swelling. He could walk on the ball of his right foot, but did avoid putting pressure on the right heel. His tarsal tunnel release was successful as noted previous to his period of adjudication, and the claimant was able to perform orthopedic maneuvers, including steady gait, although he favored the left side. These examination results are consistent with the limitation to a range of light work. While he also indicated a left knee problem, there was no limitation and medical imagery was negative. (Exhibit 13F [(R. 656-59)])

The claimant has also been treated for degenerative disc disease of the lumbar spine. Medical imagery shows this degeneration to be mild, with no nerve root compromise, and the claimant did not testify at this most recent hearing that their [sic] back was a primary limiting factor. (Exhibit 10F [(R. 645-47)]) The claimant was examined by Dr. Frederick Smith, who noted some pain and problems with his back, but normal straight leg raising, with some spasm. He reported low back pain, but medical imagery was within normal limits. (Exhibit 10F, 11F [(R. 645-54)]) This is consistent with the later examination in Exhibit 14F [(R. 660-64)], with the notation of full range of motion in all joints. The claimant is not as limited as he alleged, but there is some basis for limitation.

In his most recent examination, April 2017, the claimant alleged the same level of severity, but he was not found to have difficulties. He had no problem getting on and off the examination table, he could arise from a sitting position with no assistance, and although he refused to do some of the squat or heel maneuvers, the examining doctor found no reason he would be limited. He was uncooperative, and the physician noted that although he brought in a cane, he was observed in the parking lot to walk without it. Dr. Knoll found the claimant's allegations to be unsupported by her examination results, and that she could not find a limitation based on the claimant's performance.

The undersigned finds, out of an abundance of caution, that the reconsideration opinion of Dr. Gary Coleman provides a good baseline between earlier examinations, and the latter examinations, limiting the claimant to a light exertional level. This opinion was rendered considering all but Dr. Knoll['']s examination, and while her results show no limitation

the longitudinal evidence supports some level of limitation, and based on the whole of the evidence, this opinion is given substantial weight. The claimant was observed not to need an assistive device, and his pain allegations are not supported, which brings this opinion into focus as the best baseline.

(R. 18-19).

### 3.    Analysis

Although the ALJ did not specifically state that he accorded substantial weight to both Dr. Coleman's and Dr. Knoll's opinions, his analysis in the last paragraph quoted above shows that he did. The ALJ referred to Dr. Coleman's opinion as "a good baseline between earlier examinations, and the latter examinations, limiting the claimant to a light exertional level." (R. 19). He concluded by discussing Dr. Knoll's opinion: "The claimant was observed not to need an assistive device, and his pain allegations are not supported, which brings this opinion into focus as the best baseline." The court finds the ALJ accorded substantial weight to the opinions of both Dr. Coleman and Dr. Knoll. As the ALJ's evaluation suggests, Dr. Knoll concluded her "Diagnosis & Prognosis" by stating, "There are essentially no medically determinable impairments by exam that would prevent gainful employment at this time." (R. 717). She also provided a medical source statement opining regarding Plaintiff's specific limitations which are generally less restrictive than the physical RFC assessed by the ALJ. (R. 718-23).

Plaintiff argues that Dr. Coleman's opinion was issued more than three years before the ALJ's decision and was therefore stale and, as a non-examining source opinion, is worthy of less weight than the opinion of any other source. Plaintiff suggests—without specifying—that Dr. Knoll's opinion should have been accorded

greater weight but does not point to any other opinion which should have been accorded greater weight. Dr. Knoll opined that Plaintiff could operate foot controls continuously with his right foot but because of left knee and ankle pain only occasionally (up to one-third of the time) with his left foot. (R. 720). Plaintiff focuses on this difference and argues that the ALJ should have included this limitation in the RFC assessed. However, it is not clear that he did not include this limitation. In his hypothetical to the vocational expert (VE) the ALJ posed a hypothetical individual who could lift and carry 20 pounds occasionally and 10 pounds frequently, could stand and walk two hours a day (occasionally, as defined in the regulations and the Dictionary of Occupational Titles (DOT)), and can push and pull the same as he can lift and carry. (R. 118). Plaintiff cites the DOT job description of a medical parts assembler for the proposition that had the ALJ limited use of foot controls he would not be able to perform that job because it requires pressing a pedal. This proposition fails for two reasons. The job description does not require that operating a pedal occurs more than occasionally and, perhaps more importantly, Plaintiff does not demonstrate that the operation of the pedal could not be accomplished with the right foot (with which Dr. Knoll opined Plaintiff is able to operate foot controls continuously). This alleged error, if it was error, was harmless.

Nor does the court find Dr. Coleman's opinion stale. While the opinion was more than three years old when the ALJ considered it, he explained that he viewed it as a "good baseline between earlier examinations, and the latter examinations" (R. 19), and he also accorded substantial weight to Dr. Knoll's opinion which was the most up-to-date opinion in the record. While an old medical opinion may be rendered stale by material

changes in a claimant's medical condition over time; <u>Chapo v. Astrue</u>, 682 F.3d 1285, 12392-93 (10th Cir. 2012); Plaintiff has shown no such changes, and the ALJ procured an up-to-date examination and explained the bases for the weight accorded to each of the medical opinions relevant to the current disability decision.

## IV.    Mental RFC

Plaintiff claims the MRFC assessed by the ALJ is unsupported by substantial evidence because the ALJ erred in according substantial weight to Dr. Yates's examining source opinion, because the ALJ did not consider Plaintiff's mild mental retardation or borderline intellectual functioning, because the RFC assessed does not account for the moderate limitation in concentrating, persisting, or maintaining pace the ALJ found in his step three evaluation, and because the ALJ failed to identify and consider the weight accorded to the GAF scores contained in the record.  As to the ALJ's alleged failure to discuss mild mental retardation or borderline intellectual functioning, the only place in the record to which Plaintiff cites as evidence of mild mental retardation or borderline intellectual functioning is to the report of Dr. Watt more than four years before the period at issue here, and within the period covered by the prior decision that Plaintiff was not disabled, which as noted above constitutes <u>res judicata</u> as to that issue.

### A.    Dr. Yates's  Opinion

Plaintiff claims error in the ALJ's evaluation of Dr. Yates's opinion because Dr. Yates did not review any of the other medical records including Dr. Watt's report and because the RFC assessed is unsupported by and inconsistent with Dr. Yates's opinion in

that it does not include limitations related to the ability to sustain attention and concentration and maintain employment on an ongoing basis.  (Pl. Br. 26).

The ALJ evaluated Plaintiff's mental health impairments, based his MRFC assessment on Dr. Yates's report of his examination, and accorded little weight to the opinions of the state Disability Determination Service psychologists because the evidence does not support their finding of insufficient evidence to evaluate mental impairments. (R. 19).  He explained his evaluation of Dr. Yates's report:

> Dr. Robert Yates performed the examination [(contained in Ex. 23F, R. 710-24)], noting a diagnosis of major depressive disorder - with psychotic features and Obsessive-compulsive disorder with some anxiety.  Dr. Yates noted that the claimant's psychopathology might harm his ability to perform in the workplace due to limitations in psychosocial functioning, but that he could be able to maintain employment.  This opinion is based on examination, consistent with other longitudinal evidence, and is supported by the overall record.  It is given substantial weight.  This leads the undersigned to conclude that although the claimant can work, he would best be limited to simple work, in a socially restrictive environment, which is reflected [in the RFC assessed] above.

(R. 19).

The court finds no error in the ALJ's evaluation.  Plaintiff's claim that Dr. Yates did not review any medical records is not supported by the evidence, for Dr. Yates noted that "treatment records and a psychological evaluation were forwarded with [the] referral" (R. 702), and his opinion was "[b]ased on [Plaintiff's] mental status examination and records reviewed."  Id. at 704.  To the extent the psychological evaluation to which Dr. Yates referred may not have been Dr. Watt's evaluation, there is no error because as noted above that evaluation was performed almost nine years before Dr. Yates's evaluation and within the period of an earlier adjudication which is res judicata.

The court finds, contrary to Plaintiff's argument, the ALJ's RFC is supported by and consistent with Dr. Yates's opinion to which the ALJ accorded substantial weight. Plaintiff is correct that "Dr. Yates noted Plaintiff showed problems with working memory, which may negatively impact attention and concentration, … was unable to count backwards from 100 by 7s, … was unable to correctly spell the word 'world' backwards, [and] opined Plaintiff's level of impairment due to psychopathology may make it difficult for him to maintain employment." (Pl. Br. 26) (citing R. 704, 708).[4] However, Dr. Yates stated a summary of his opinions in his narrative report:

> William showed mild if any limitations related to cognitive function. He did show significant impairment in psychosocial function related to major depression and obsessive compulsive disorder. William may experience difficulty with work related demands related to physical health problems or with motivation related to symptoms of depression. However, with respect to mental status, William should be able to maintain employment, follow basic commands, and maintain adequate independence.

(R. 704). The ALJ's explanation of his evaluation of Dr. Yates's opinion is a reasonable understanding of the report. While the report <u>might</u> be understood as Plaintiff sees it—to suggest greater limitations than those assessed by the ALJ—it does not compel greater limitations. <u>I.N.S. v. Elias-Zacarias</u>, 502 U.S. at 481, n.1 (To overturn an agency's finding of fact the court "must find that the evidence not only <u>supports</u> [a contrary] conclusion, but <u>compels</u> it."). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being

---

[4] Plaintiff's Brief cited only R. 708, but in his Reply Brief, he noted a typographical error in his Brief and that the reference to psychopathology should have cited R. 704. (Reply 6).

supported by substantial evidence. [The court] may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

###    B.    Moderate Limitation in Concentrating Persisting, or Maintaining Pace

Plaintiff argues the ALJ found Plaintiff has a moderate limitation in concentrating, persisting, or maintaining pace but did not include related limitations in the RFC assessed. Id. (citing R. 16, 17). He acknowledges that the ALJ limited Plaintiff to simple, routine tasks but argues that "is insufficient to account for limitations in concentration, persistence, or pace." Id. at 26-27 (citing Jaramillo v. Colvin, 576 F. App'x 870, 874-75 (10th Cir. 2014); Bowers v. Astrue, 271 Fed. App'x. 731, 733-34 (10th Cir. 2008); Miranda v. Barnhart, 205 F. App'x 638, 643 (10th Cir. 2005); Wiederholt v. Barnhart, 121 F. App'x 833, 839 (10th Cir. 2005); Chambers v. Barnhart, 2003 WL 22512073 (10th Cir. 2003); Brown v. Colvin, No. 12-1456-SAC, 2014 WL 1095048, at *4 (D. Kan. Mar. 19, 2014)).

The Commissioner argues that the limitation in concentrating, persisting, or maintaining pace found by the ALJ and cited by Plaintiff is a "paragraph B" criterion which may be accounted for by a limitation to unskilled work such as the limitation to simple routine tasks assessed by the ALJ in this case. (Comm'r Br. 15) (citing Smith v. Colvin, 821 F.3d 1264, 1269 (10th Cir. 2016); and Vigil v. Colvin, 805 F.3d 1199, 1204 (10th Cir. 2015)).

The court finds Vigil, 805 F.3d 1199, cited by the Commissioner, controlling here. In that case, the court recognized that at step three the ALJ found that the plaintiff had moderate difficulties in concentration, persistence, and pace. 805 F.3d at 1203. The court recognized that the step two and three findings regarding the paragraph B criteria are not an RFC assessment and the ALJ's findings "at step three do[] not necessarily translate to [] work-related functional limitation[s] for the purposes of the RFC assessment." Id. (citing SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996)). The court went on to consider the ALJ's "'more detailed' step four assessment of [the plaintiff's] RFC," id., and determined that the ALJ accounted for the plaintiff's moderate limitations in the paragraph B criteria "by limiting him to unskilled work." Id. at 1204. The court acknowledged that in some cases a limitation to unskilled work may not account for all of a claimant's mental limitations, but that the ALJ's explanation adequately accounted for the claimant's mental limitations. Id. (noting "Unskilled work generally requires only the following: (1) '[u]nderstanding, remembering, and carrying out simple instructions'; (2) '[m]aking judgments that are commensurate with the functions of unskilled work—i.e., simple work-related decisions'; (3) '[r]esponding appropriately to supervision, co-workers and usual work situations'; and (4) '[d]ealing with changes in a routine work setting.'" (quoting SSR 96-8p).

Thus, the question isn't whether the limitations the ALJ assessed in the broad mental functional areas at steps two and three are included verbatim within the RFC assessed, but whether the ALJ explained his mental RFC assessment and whether that explanation is supported by the record evidence. The ALJ here explained his rationale in

determining Plaintiff is at least capable of performing "simple, routine tasks that are not performed in coordination or in tandem with co-workers.  He can occasionally interact with supervisors, and co-workers.  He cannot interact with the general public."  (R. 17); see also (R. 16, 18) (explanation).  That finding is supported by the record evidence, and Plaintiff has not met his burden to show otherwise.  Plaintiff's contrary arguments are based on unpublished opinions of the Tenth Circuit and non-binding opinions of other circuit or district courts which are not persuasive and cannot contravene the binding precedent presented in Vigil.

### C.    GAF Scores

Plaintiff argues that in assessing his MRFC the ALJ failed to identify and consider the weight accorded to the GAF scores contained in the record.  (Pl. Br. 27) (citing R. 519 (Dr. Watt's Report) and 672 (High Plains Mental Health Center)).  The Commissioner argues that the American Psychological Association's Diagnostic and Statistical Manual of Mental Disorders (5th ed. 2013) (DSM-V) discontinued the use of GAF scores "because of 'its conceptual lack of clarity … and questionable psychometrics in routine practice.'"  (Comm'r Br. 17) (quoting Krchmar v. Colvin, 548 F. App'x 531, 534 n.2 (10th Cir. 2013) (quoting DSM-V).  He argues that although the GAF score of 30 appears in the treatment records from High Plains, none of those providers opined that Plaintiff is unable to work or has a work-related mental impairment, and in such circumstances the GAF score assigned would not merit discussion.  Id.  In his Reply Brief, Plaintiff argues that the Commissioner's appeal to DSM-V is an impermissible post hoc argument and the agency's policy is that ALJs will continue to consider GAF

scores as medical opinions.  (Reply 8) (citing Administrative Message (AM), AM-13066, (July 22, 2013)).

As noted previously, Dr. Watt's report is from a period in which the issue of disability is <u>res judicata</u>, so the GAF score assigned therein is irrelevant to the issues here.  The High Plains treatment records contain a GAF score "on admission" of 30 which the earlier DSM (4th ed. Text Revision, DSM-IV-TR) defined as "**Behavior is considerably influenced by delusions or hallucinations, OR serious impairment in communication or judgment** (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) **OR inability to function in almost all areas** (e.g., stays in bed all day, no job, home, or friends).  DSM-IV-TR at 34 (bold in original).

Plaintiff's citation to AM-13066 footnoted a URL which the court was unable to locate: ([http://policynet.ba.ssa.gov/reference.nsf/lnx/ 07222013022250PM](http://policynet.ba.ssa.gov/reference.nsf/lnx/07222013022250PM)) (Reply 8, n.11).  Nonetheless, the court's further extensive research revealed some operative facts regarding the message cited.  As Plaintiff suggests, the message does state that ALJs will continue to consider GAF scores as medical opinion evidence.  However, the message was revised in October 2014 explaining:

> [A] GAF needs supporting evidence to be given much weight. By itself, the GAF cannot be used to "raise" or "lower" someone's level of function.  The GAF is only a snapshot opinion about the level of functioning.  It is one opinion that we consider with all the evidence about a person's functioning. Unless the clinician clearly explains the reasons behind his or her GAF rating, and the period to which the rating applies, it does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis.

AM-13066 (July 22, 2013) REV (Oct. 14, 2014) (quoted in <u>Hallman v. Berryhill</u>, No.

CIV-16-903-BMJ, 2017 WL 2424664, at *6 (W.D. Okla. June 5, 2017)).  Another court

has explained:

> The problem with using the GAF to evaluate disability is that there is no way to standardize measurement and evaluation. Some clinicians give inflated or unrealistically low GAF ratings because the GAF rating instructions in the DSM–IV–TR are unclear ... [this] can lead to improper assessment of impairment severity.

<u>Hallman v. Berryhill</u>, No. CIV-16-903-BMJ, 2017 WL 2424664, at *6 (W.D. Okla. June

5, 2017) (<u>quoting</u> AM–13066).

The GAF score of 30 in the High Plains treatment records was given "on

admission," and there was no explanation of the particular basis of the score.  It may have

been assessed because Plaintiff reported he "heard voices."  (R. 681).  It may have been

assessed because at the time he was homeless.  <u>Id.</u>  Any finding by the court in that

regard would be mere speculation.  Moreover, a finding of "hearing voices" is not

supported by the record as a whole and a finding of homelessness would not tend to

imply an inability to work.

Finally, even before DSM-V was published the Tenth Circuit "repeatedly noted

(quoting <u>Howard v. Comm'r of Soc. Sec.</u>, 276 F.3d 235, 241 (6th Cir. 2002)) that

generalized GAF scores, which do not specify particular work-related limitations, may be

helpful in arriving at an RFC but are 'not essential to the RFC's accuracy.'"  <u>Luttrell v.

Astrue</u>, 453 F. App'x 786, 792 n.4 (10th Cir. 2011) (citing <u>Butler v. Astrue</u>, 412 F. App'x

144, 147 (10th Cir. 2011); and <u>Holcomb v. Astrue</u>, 389 F. App'x 757, 759 (10th Cir.

2010)).  If the ALJ's failure to discuss this GAF score was error, that error was harmless.

## V.    Friend's Opinion

Plaintiff argues remand is necessary because the ALJ failed to mention or weigh the opinion of Plaintiff's friend, Craig Speake.  (Pl. Br. 21-22).  The Commissioner argues Mr. Speake's statements are merely duplicative of Plaintiff's allegations and Plaintiff does not explain how the alleged failure to discuss Mr. Speake's statements harmed him.  (Comm'r Br. 6) (citing Best-Willie v. Colvin, 514 F. App'x 728, 736 (10th Cir. 2013).  In his Reply Brief Plaintiff argues the underpinnings of Best-Willie were swept away when the Eighth Circuit "revisited" the case of Buckner v. Astrue, 646 F.3d 549 (8th Cir. 2011) upon which Best-Willie relied and found that third-party statements are not redundant with the Plaintiff's statements nor discredited by the same evidence. (Reply 1) (citing Willcockson v. Astrue, 540 F.3d 878, 881 (8th Cir. 2008) and Nowling v. Colvin, 813 F.3d 1110 (8th Cir. 2016)).

The court finds the Best-Willie decision persuasive here.  The court in Best-Willie considered the lay witness statement of Mr. Willie, Ms. Best-Willie's husband.  514 F. App'x at 736.  It found that Mr. Willie's letter was cumulative of Ms. Best-Willie's allegations which the ALJ had discussed and found not credible.  Id.  It noted that the ALJ had not addressed Mr. Willie's letter but found "any error in failing to do so is harmless because 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'"  Best-Willie, 514 F. App'x at 736 (quoting Buckner, 646 F.3d at 560).  Here, Mr. Speake's statements regarding Plaintiff's limitations are quite similar to Plaintiff's statements himself, and the ALJ

found Plaintiff's allegations inconsistent with much of the record evidence. That same evidence would tend to discount Mr. Speake's statements.

Plaintiff's attempts to discredit <u>Buckner</u> as the case upon which <u>Best-Willie</u> depends is unavailing. First, there is no indication whatever that <u>Buckner</u> has been overruled. Second, <u>Willcockson</u> was decided three years before <u>Buckner</u> and five years before <u>Best-Willie</u> and was available for both courts' consideration when those cases were decided. Therefore, when the <u>Nowling</u> court joined <u>Willcockson</u> in "questioning" the issue, it may affect the weight future courts, especially Eighth Circuit courts, attribute to the issue but it has no affect on the basis for the court's finding in <u>Best-Willie</u>.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated February 5, 2020, at Kansas City, Kansas.


<u>s:/ John W. Lungstrum</u>
**John W. Lungstrum**
**United States District Judge**